IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

|  |  |
|---|---|
| LANSANA MANSARAY, | ) ) ) 1:25-CV-00090-RAL |
| Petitioner | ) ) ) ) RICHARD A. LANZILLO |
| v. | ) Chief United States Magistrate Judge ) ) |
| COMMONWEALTH OF PENNSYLVANIA, | ) ) MEMORANDUM OPINION ON ) PETITION FOR WRIT OF HABEAS ) CORPUS |
| Respondent | ) ) ) ECF NO. 3 ) |

I.    Introduction

This matter is before the Court for consideration of the Petition for Writ of Habeas Corpus filed by Petitioner Lansana Mansaray pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). ECF No. 3. Mansaray is challenging the judgment of sentence imposed upon him by the Court of Common Pleas of Venango County in CP-61-CR-594-2016. For the following reasons, Mansaray's Petition will be denied and no certificate of appealability will issue.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

1

II.    Background

The Pennsylvania Superior Court, in affirming the dismissal of Mansaray's request for relief under the Pennsylvania Post-Conviction Relief Act (PCRA), recounted the factual background and evidence that led to his arrest and conviction as follows:

> The Defendant is a citizen of the Republic of Sierra Leone. He lawfully entered the United States in 2006. On May 28, 2009, he was ordered removed and an immigration warrant was issued for his removal from the United States. In 2015, he was granted a Temporary Protected Status (TPS) Visa, which does not automatically terminate a removal order. On May 21, 2016, the Defendant's TPS Visa expired at which point the Defendant was in the United States illegally.
>
> On August 23, 2016, Officer Daly of the Oil City Police Department was dispatched following a report that two young males, ages five (5) and six (6) years old, were in the roadway holding car seats. Upon arriving at the scene, Officer Daly interviewed two adult females nearby who told him that the two males Were the Petitioner's sons. Further, the two females told Officer Daly that they had observed the Petitioner commanding the two males to remove their car seats from his car. They then observed the Petitioner drive off, leaving the children in the roadway. The two females reported they had seen the Petitioner do this before. Officer Daly also interviewed the two males who stated that the Petitioner has left them like this multiple times in the past.
>
> On September 19, 2016, the Defendant was charged by Formal Information with one (1) count of Endangering the Welfare of Children in violation of 18 Pa. C.S.A. § 4304(a)(1), a Felony 3. The Defendant was appointed Jeri Bolton, Esquire, as counsel on August 31, 2016. On December 28, 2016, the Commonwealth amended the Formal Information by lowering the child endangerment count to a Misdemeanor 1. Also on December 28, 2016, the defendant pled guilty to the child endangerment count.
>
> On January 4, 2017, the Defendant was sentenced at C.R. No. 594-2016 to a term of incarceration of a minimum of five (5)

> months to a maximum of twenty-four (24) months less one day in prison followed by one ( 1) year of probation. The Defendant was given 128 days of credit for time previously served. While researching for the Defendant's release plan, a parole agent discovered that the Defendant was in the United States illegally and had an outstanding immigration related warrant. On January 19, 2017, while serving his sentence in the Venango County Jail, the Petitioner was handed over to the Department of Homeland Security on the immigration warrant arising out of his May 28, 2009 removal order. Immigration and Customs Enforcement agents removed from the Petitioner from the United States and the Petitioner was returned to Sierra Leone on April 25, 2017.

ECF No. 24-11 at pp. 1-2.

Mansaray did not seek direct review. Instead, he filed several unsuccessful civil rights lawsuits challenging various aspects of his arrest, prosecution, and deportation. *See, e.g., Mansaray v. Wenner*, No. 1:21-CV-00351-SPB (W.D. Pa. Dec. 20, 2021); *Mansaray v. Wenner*, No. 1:22-CV-00081-SPB (W.D. Pa. Mar. 1, 2022). At some point while he was litigating those cases, Mansaray became aware of a clerical error in his criminal complaint. Specifically, in the field where the arresting officer entered Mansaray's driver's license information, he inaccurately recorded that Mansaray had a New York license that expired in 2014 when, in fact, Mansaray had a "valid 2016 Pennsylvania identification card." *See* ECF No. 24-11; ECF No. 25 at p. 2. Convinced that he had uncovered an exculpatory "smoking gun," Mansaray filed a brief in *Mansaray v. Wenner*, 1:22-CV-00081, declaring that the arresting officer had "intentionally and willfully" inserted this "falsified" and "fabricated" information into his criminal complaint as part of a "conspiracy" with other police officers to violate his constitutional rights for unknown reasons. 1:22-CV-00081-SPB

at ECF No. 20, p. 2. United States District Judge Susan Paradise Baxter ultimately dismissed that case on *res judicata* grounds but noted, in a footnote, that Plaintiff's claims were "likely time barred by the statute of limitations" because "Plaintiff knew or should have known of his injuries arising out of these factual circumstances more than two years prior to filing this complaint in March 2022 (or a prior compliant in an earlier federal action in December 2021)." *Id.* at ECF No. 22, p. 5, n. 4.

On November 13, 2024, Mansaray filed a PCRA Petition in state court seeking relief from his conviction based on the inaccurate driver's license information recorded on his criminal complaint. ECF No. 24-11 at p. 25. In his first ground for relief, Mansaray asserted that the arresting officer had "falsified evidence that was material to his conviction when he listed the Petitioner's New York Driver's License in the Police Criminal Compliant instead of the Defendant's Pennsylvania Driver's License." ECF No. 24-11 at p. 26. The PCRA Court rejected his petition on numerous grounds including, *inter alia*, that his criminal sentence had expired, his petition was untimely, and the offending criminal complaint was not "newly discovered evidence" for purposes of extending the statutory filing period. *Id.* at pp. 27-28. With respect to the latter finding, the court explained:

> The Petitioner's claim that his criminal complaint contains inaccurate driver's license information is a previously known fact, not a newly discovered one. The criminal complaint was provided to the Defendant at the preliminary arraignment and would have been part of the discovery provided to him and his attorney prior to entering his guilty plea. The Petitioner had ample opportunity to discover this information prior to his guilty plea by the exercise of reasonable diligence.

4

*Id.* at p. 28. The court also noted that the inaccurate driver's license information "would not have resulted in a different verdict" because "[t]his type of error on the criminal complaint would qualify as a harmless error and is not an element of the child endangerment count to which the defendant pled guilty." *Id.* Mansaray did not seek review of that decision from the Pennsylvania Superior Court.

III.    Analysis

AEDPA imposes a one-year limitations period for state prisoners seeking federal habeas review. Codified at 28 U.S.C. § 2244(d), the statute provides that:

> (1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)    The time during which a properly filed application for State post-conviction or other collateral review with

respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In analyzing whether a petition for writ of habeas corpus has been timely filed, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). *Caldwell v. Mahally, et al.*, 2019 WL 5741706, *5 (W.D. Pa. Nov. 5, 2019). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). *Id.* at *6. Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. *Id.* at *8.

Turning first to the "trigger date," Respondent contends that Mansaray's judgment of sentence became final on or about February 3, 2017, at the expiration of the time for filing a direct appeal from the judgment of sentence. Pa.R.A.P. 903(a); *Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review). Mansaray, in response, maintains that the trigger date for his petition should be determined under Section 2244(d)(1)(D), rather than Section 2244(d)(1)(A), because his claim is based on "newly discovered evidence" that he could not have previously discovered through the exercise of due diligence. ECF No. 3 at p. 3; ECF No. 25 at p. 2. In his view, his claim accrued "no earlier than December 30, 2024,"

when "conviction-record research revealed . . . the unchallenged fabrication" in his criminal complaint. ECF No. 25 at pp. 4-5.

Petitioners who seek to avail themselves of the "newly discovered evidence" provision in Section 2244(d)(1) must make "a specific and precise showing." *Gonzalez v. Superintendent, SCI Forest*, 2025 WL 1732524, at *9 (M.D. Pa. Apr. 15, 2025). Section 2244(d)(1)(D) provides a petitioner with a later accrual date "only if vital facts could not have been known" through the exercise of due diligence. *Ajamu-Osagboro v. Patrick*, 620 F.Supp.2d 701, 711 (E.D. Pa. June 3, 2009) (quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir.2004) (quotation and citation omitted)). For purposes of this determination, "the diligence required . . . is reasonable diligence, not maximum feasible diligence." *Gonzalez*, 2025 WL 1732524, at *9.

Mansaray cannot meet this standard. Initially, the criminal complaint at issue – if it can even be characterized as relevant evidence[2] – was not newly discovered. As the Superior Court explained, the criminal complaint was provided to Mansaray at his initial arraignment and turned over to his attorney during discovery.[3] ECF No. 24-11 at p. 28. Mansaray had ample opportunity to examine that document and discover the error as far back as 2016 or 2017. And, even if he could somehow demonstrate that he failed to notice the error at that time despite the exercise of reasonable diligence, the Court takes judicial notice of the fact that Mansaray filed a

---

[2] As will be discussed more fully below, it is nearly impossible to discern how a trivial clerical error in a criminal complaint would have any bearing on Manasaray's ultimate conviction for child endangerment.

[3] The state court's determination that the criminal complaint did not constitute newly discovered evidence that would justify the filing of an untimely petition is "presumed to be correct unless the petitioner can show by clear and convincing evidence that these factual findings were erroneous." *Gonzalez*, 2025 WL 1732524, at *11 (quoting 28 U.S.C. § 2254(e)(1). Mansaray has made no attempt to overcome this presumption.

motion in a prior civil action on May 31, 2023, acknowledging that he first discovered the error on "November 19, 2021, when USCIS based its decision to deny Plaintiff 1360 VAWA Petition using Oil City Police Dept. Biased Incident report against Plaintiff Lansana Mansaray." 1:22-CV-00081-SPB at ECF No. 20, p. 2. Whether the statutory limitations period triggered in 2017, when he could have discovered the error, on November 19, 2021, when he previously claimed to have discovered the error, or on May 31, 2023, when his filings indicate that he was undeniably aware of the error, his petition is still untimely.[4]

Before dismissing the petition, the Court must consider whether AEDPA's statute of limitations should be statutorily or equitably tolled. *See Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002), *cert. denied*, 540 U.S. 826 (2003) (citing sources omitted). With respect to statutory tolling, Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding. However, a state collateral petition only qualifies as "properly filed" for purposes of AEDPA "when its delivery and acceptance [comply] with the applicable laws and rules governing filings" in the state's courts. *Ajamu-Osagboro*, 620 F.Supp.2d at 712-13 (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). Because the PCRA court dismissed Mansaray's petition – filed six-and-a-half years after his conviction – as untimely and jurisdictionally barred, it cannot be considered "properly filed" for AEDPA purposes and does not toll the statute of limitations. *Id.*

---

[4] This finding mirror's Judge Baxter's prior conclusion that Plaintiff likely knew of the erroneous driver's license information well before filing his 2022 civil rights action. *See Mansaray*, 1:22-CV-00081-SPB at ECF No. 20, p. 5, n.4.

(noting that, if petitioner "files an out of time application and the state court dismisses it as time barred, then a federal court must deem the application not 'properly filed' for tolling purposes.") (citing *Merritt v. Blaine*, 326 F.3d 157, 165-66 (3d Cir. 2003)). *See also Holmes v. Harry*, 2025 WL 3158922, at *3 (M.D. Pa. Nov. 12, 2025) ("[B]ecause the state courts found that the second petition was untimely and jurisdictionally barred, ... [petitioner's] post-conviction petition was not "properly filed" as required by 28 U.S.C. § 2244(d)(2).").

Equitable tolling is similarly unavailable. Because equitable tolling is "not favored," it should be applied "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." *Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 272 (3d Cir. 2022) (noting that federal courts are to use equitable tolling sparingly) (quoting *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005)). To receive the benefit of equitable tolling, a petitioner must demonstrate that he: (1) pursued his rights diligently, and (2) extraordinary circumstances prevented him from filing a timely petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The petitioner bears a "strong burden to show specific facts" supporting equitable tolling. *Haskin v. Pennsylvania*, 2024 WL 3445714, at *2 (W.D. Pa. June 14, 2024) (quoting sources omitted).

In the instant case, Mansaray primarily seeks equitable tolling based on his deportation to Sierra Leone following his conviction. Mansaray maintains that this forcible removal prevented him from accessing state court dockets, obtaining transcripts, and discovering that his PCRA petition had been dismissed. ECF No. 25

at p. 6. However, while his immigration status may have made litigation more difficult, Mansaray has not cited any caselaw for the proposition that deportation constitutes an "extraordinary circumstance" for purposes of AEDPA. Notably, Mansaray's deportation did not prevent him from filing at least four other civil actions in this district between 2021 and 2025. See, e.g., *Mansaray v. Wenner*, No. 1:21-CV-00351-SPB (W.D. Pa. Dec. 20, 2021); *Mansaray v. Wenner*, No. 1:22-CV-00081-SPB (W.D. Pa. Mar. 1, 2022); *Mansaray v. Daly*, 1:25-CV-00020-SPB (W.D. Pa. Jan. 29, 2025); *Mansaray v. Kirtland*, 1:25-CV-00102-SPB (W.D. Pa. Apr. 16, 2025).

Nor can Mansaray demonstrate that he pursued his rights diligently. While he claims that he "pursued relief relentlessly" following his deportation, each of the civil actions that he cites as evidence of his diligence was filed after December 20, 2021 – over three years after the expiration of the AEDPA limitations period. *See, e.g.*, *Mansaray*, No. 1:21-CV-00351-SPB. Mansaray has made no attempt to establish that he exercised reasonable diligence prior to that date, likely because he relies so heavily on the purported "new evidence" that he discovered around that time. Because that argument, as discussed above, is meritless, it provides no basis for tolling. *Holmes*, 2025 WL 3158922, at *4 ("[Petitioner's] primary timeliness argument—as explained above—alleges a different accrual date for the AEDPA's one-year limitations period based on purportedly new evidence, and that argument is meritless. So equitable tolling does not apply, either.").

Finally, Mansaray seeks equitable tolling based on his purported "actual innocence" of the underlying crime. Courts have acknowledged that actual innocence

may constitute an extraordinary circumstance for purposes of tolling AEDPA's limitations period. *Schlup v. Delo*, 513 U.S. 298 (1995). To establish actual innocence, the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. *See also Knecht v. Shannon*, 132 Fed. Appx. 407, 409 (3d Cir.2005) (applying the *Schlup* standard to an actual innocence claim asserted in support of equitable tolling). The petitioner must also demonstrate that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Sweger v. Chesney*, 294 F.3d 506, 522 (3d Cir. 2002) (quotation and citations omitted). Such requests are "rarely embraced" by the courts. *Gonzalez*, 2025 WL 1732524, at *9.

The lone evidence Mansaray provides of his actual innocence is the inaccurate driver's license information on his criminal complaint. Mansaray attaches enormous significance to this error, characterizing it as an intentional, conspiracy-driven "fabrication" of evidence that "fundamentally tainted" his criminal case from the outset. ECF No. 25 at p. 2. However, he has made no attempt to explain how a clerical mistake on a form somehow serves to negate any element of the child endangerment charge to which he pled guilty. As courts have repeatedly noted, actual innocence, in this context, "means factual innocence, not mere legal insufficiency." *Ajamu-Osagboro*, 620 F.Supp.2d at 718 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Mansaray does not deny any of the elements of the underlying crime, and any implication that no juror could have found him guilty of

11

leaving his children unattended in the street because a police officer later made a mistake on a form is patently frivolous. *See, e.g., Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (new evidence offered in support of actual innocence must be "so probative of innocence that no reasonable juror would have convicted the petitioner"). As such, his actual innocence claim cannot salvage his petition.

In short, Mansaray has failed to establish that this case presents the rare situation where equitable tolling is demanded by sound legal principles and the interests of justice. Consequently, the petition is untimely and must be denied on that basis.

IV.    Certificate of Appealability

AEDPA provides that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that

standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied as untimely. Accordingly, no certificate of appealability should issue.

V.    Conclusion

As outlined above, Mansaray's petition is untimely and is not subject to statutory or equitable tolling. Accordingly, his petition for writ of habeas corpus is denied, with prejudice, and no certificate of appealability should issue. A separate order will follow.

DATED this 17th day of March, 2026.

BY THE COURT:

RICHARD A. LANZILLO
Chief United States Magistrate Judge